**Reverse and Remand and Opinion Filed August 20, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00406-CV

**PETRODRILLBITS INTERNATIONAL, INC., Appellant**
V.
**VAREL INTERNATIONAL INDUSTRIES, L.P.
AND VAREL EUROPE, S.A.S., Appellees**

On Appeal from the 44th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 11-00490

## MEMORANDUM OPINION
Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Francis

PetroDrillBits International, Inc. (PDBI) appeals the trial court's summary judgment in favor of Varel International Industries, L.P. and Varel Europe, S.A.S. In a single issue, PDBI contends the trial court erred by granting summary judgment because material issues of disputed fact exist regarding the breach of contract claim. We agree. We reverse the judgment and remand this case for further proceedings.

Varel manufactures oilfield and mining drill bit products. In August 2006, PDBI and Varel entered into a Sales Technical Service Representation Agreement in which PDBI agreed to act as Varel's authorized sales representative by providing "sales and technical service" to certain customers in the Commonwealth of Independent States (former Soviet Union) on a "non-

exclusive basis." The contract had an initial term of twelve months but renewed annually unless either party gave written notice of its intent to terminate the agreement no less than sixty days before the end of the then-current term.

Mark Sadykhov, a petroleum engineer born in Azerbaijan, has been in the oil and gas business in the Commonwealth of Independent States for many years. In 2009, Sadykhov started MMS Holdings Group, a holding company for the oil and gas drilling services company, New Tech Services. Sadykhov was already familiar with Varel drill bits and wanted MMS to sell them in Russia and other CIS countries. Alan Drane, a purchasing manager for MMS, had purchased Varel drill bits in the past and set up a meeting between Sadykhov and Les Schreiber, the president of PDBI, in the spring of 2009. Schreiber met with Sadykhov at least four times during the spring of 2009 to discuss Varel products and to provide product price sheets, product requirements, and technical services.

In late May 2009, Schreiber sent an email to Bernard Pontneau, vice president of Varel International, to let him know about Sadykhov's new companies and his interest in Varel drill bits for those companies. During a meeting several days later, Schreiber provided Pontneau detailed information about Sadykhov's drilling and service company, the meetings PDBI had with Sadykhov to date, and the projections of potential annual sales of Varel's drill bits to MMS. PDBI arranged a meeting in July 2009 in Amsterdam to introduce Pontneau to Sadykhov. Throughout the summer, PDBI continued meeting with Sadykhov to discuss MMS's interest in Varel bits as well as to provide technical services.

In September 2009, Varel cancelled its agreement with PDBI, effective July 31, 2010, and informed PDBI any sales to MMS would be made directly by Varel. In December 2009,

MMS began buying drill bit products directly from Varel. As expected, the sales to MMS were significant, totaling over $2 million by July 31, 2010.

PDBI sued Varel, alleging Varel anticipatorily breached the agreement by refusing to pay PDBI commissions on sales, preventing PDBI from continuing to provide support and technical assistance to MMS, and preventing PDBI from making sales to MMS. PDBI also alleged claims for fraud and civil conspiracy. Varel filed a traditional motion for summary judgment which the trial court granted with respect to PDBI's breach of contract claim but denied with respect to the remaining claims. PDBI then filed a nonsuit of its fraud and conspiracy claims, making the summary judgment final.

In its sole issue, PDBI contends the trial court erred by granting summary judgment on the breach of contract claim because material fact issues exist. PDBI claims it presented evidence it procured MMS as a buyer of Varel products and provided "sales and technical services" to MMS and is "entitled to commission on sales" to MMS up to July 31, 2010, the end of the agreement. PDBI responds to Varel's contention that PDBI did not make the actual "sales" by asserting Varel anticipatorily breached the agreement before the sales were made.

To succeed in a traditional motion for summary judgment, the defendant must establish there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). If the defendant's motion and summary judgment evidence establish its right to judgment as a matter of law, the burden then shifts to the party opposing the motion to raise a genuine issue of material fact or show the defendant's legal position is unsound. *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 303 (Tex. App.—Dallas 2007, no pet.). In reviewing a summary judgment, we consider the evidence in the

light most favorable to the nonmovant and resolve any doubt in its favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

The elements of breach of contract are (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Crown Asset Mgmt., L.L.C. v. Loring*, 294 S.W.3d 841, 848 (Tex. App.—Dallas 2009, pet. denied). The elements of anticipatory breach are (1) the defendant repudiated the obligation (2) without just excuse and (3) plaintiff was damaged from the breach. *Taylor Pub. Co. v. Sys. Mktg, Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1994, writ ref'd n.r.e.).

The agreement between Varel and PDBI states:

(2) During the term of this Agreement, PDBI is authorized to provide *sales and technical service* to VAREL for certain customers and countries listed below on a nonexclusive basis . . . .

(3) For satisfactorily rendering such *sales and service*, VAREL will pay to PDBI commissions on the net selling price of oilfield and mining drill bit products in accordance with the following schedule:

(a) 12.5% commission is to be paid on *product sales* with 40% to 50% gross margin . . . .

(Emphasis added). The plain language of the agreement states PDBI is to provide sales and technical service to Varel customers and, if PDBI satisfactorily renders "such sales and service," Varel will pay a commission based on product sales. The agreement does not define "sales and technical service" nor does it limit the term "sales" in the second paragraph to "product sales."

In its motion for summary judgment, Varel claimed PDBI could not show PDBI performed, tendered performance of, or was excused from performing its contractual obligations or that Varel breached the contract. In support of its contentions, Varel claimed PDBI admitted, in its responses to the first set of interrogatories and through Schreiber's deposition testimony, it

"never actually made any sales to MMS or NewTech" and, therefore, Varel could not have breached the contract.

In its response to Varel's motion, PDBI presented evidence that Schreiber set the initial meeting in March 2009 with Sadykhov to provide an overview of the Varel drill product line and to address PDBI's role in supplying the bits and technical services to customers in Russia and CIS countries. After this meeting, Schreiber attended meetings in April, May, June, July, and August in Houston, Dallas, Moscow, and Amsterdam with Sadykhov and various others. During the follow-up meetings, Schreiber discussed Varel's drill bit product line capabilities and product pricing, reviewed lists of drill bits from competitors, and provided Sadykhov with lists of comparable Varel bits. Schreiber and his son, David, met with members of Sadykhov's executive team in Moscow to familiarize the team with Varel products. Schreiber provided Pontneau with detailed information about Schreiber's meetings with Sadykhov as well as detailed information about Sadykhov and his new companies, their product needs, and projected sales. Schreiber arranged a meeting between Pontneau and Sadykhov and attended that meeting. Schreiber set up a meeting between Sadykhov and Varel president, Jim Nixon. Schreiber said that, as a result of PDBI's considerable time, efforts, and expenses, Sadykhov planned to use Varel as his primary supplier of drill bits. Based on initial projections, PDBI estimated MMS would produce sales of $3 to $4 million in 2010 alone, with potential sales in 2011 of $4 to $5 million.

PDBI also presented evidence that David Schreiber, vice president of PDBI, provided technical information to Sadykhov regarding Varel drill bits and attended the meetings with Sadykhov and Schreiber. Because of his detailed involvement in Sadykhov's operations, David was required to sign a confidentiality agreement with Sadykhov.

This evidence raises a fact issue whether PDBI rendered sales and technical service under the terms of the agreement. Because PDBI came forward with summary judgment evidence raising a fact issue whether it provided sales, product support, and technical services to MMS and New Tech, we conclude the trial court erred by granting summary judgment in favor of Varel. We sustain PDBI's sole issue.

We reverse the trial court's summary judgment and remand this case for further proceedings.

120406F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PETRODRILLBITS INTERNATIONAL, INC., Appellant

No. 05-12-00406-CV      V.

VAREL INTERNATIONAL INDUSTRIES, L.P. AND VAREL EUROPE, S.A.S., Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 11-00490.
Opinion delivered by Justice Francis, Justices O'Neill and Fillmore participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's summary judgment and **REMAND** this case for further proceedings.

It is **ORDERED** that appellant PETRODRILLBITS INTERNATIONAL, INC. recover its costs of this appeal from appellees VAREL INTERNATIONAL INDUSTRIES, L.P. AND VAREL EUROPE, S.A.S..

Judgment entered this 20th day of August, 2013.

/Molly Francis/
MOLLY FRANCIS
JUSTICE